IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

COURTNEY J. PRESTON,

     Petitioner,

v.                                                    CASE NO. 1:18-cv-68-AW-GRJ

SEC'Y, FLA. DEP'T OF
CORR.,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case on April 12, 2018, when he filed his

Petition for Writ of Habeas Corpus.[1]  ECF No. 1.  In his Amended Petition,

Petitioner challenges his Alachua County convictions in 2012 for first-

degree murder and armed home invasion robbery, for which Petitioner is

serving concurrent sentences of life imprisonment (including minimum

mandatory sentences of 25 years as to each count).  ECF No. 7.

Respondent has filed a response in opposition, together with relevant

portions of the state-court record, ECF No. 31, and Petitioner has filed a

---

[1] Although the Court's docket reflects a filing date of April 16, 2018, the "mailbox rule" applies because Petitioner is incarcerated and proceeding *pro se*.  *Romanes v. Sec'y, Dep't of Corr.*, 621 F. Supp. 2d 1249, 1264 n.10 (M.D. Fla. 2008) (citing *Houston v. Lack*, 487 U.S. 266 (1988); *Adams v. United States*, 173 F.3d 1339 (11th Cir. 1999)).

reply memorandum addressing only one of Respondent's arguments, ECF No. 33.

Upon due consideration, it is respectfully **RECOMMENDED** that the Amended Petition, ECF No. 7, should be **DENIED**.

## I. BACKGROUND

The procedural history of this case is established in the state court records appended to Respondent's motion. An Alachua County grand jury indicted Petitioner for the first-degree murder (in violation of Fla. Stat. § 782.04(1)(a)), armed home invasion robbery (in violation of Fla. Stat. § 812.135), and unlawful possession of a firearm by a convicted felon (in violation of Fla. Stat. § 790.23(1)). ECF No. 31-1 at 83–84.

In short—according to a warrant affidavit by the Alachua County Sheriff's Office—on November 3, 2010, a masked man entered victim John Civill's apartment, pointed a gun at Civill, and demanded Civill quote "give it up." *Id.* at 69. Civill resisted, the masked man and Civill fought, a witness (who was present inside when the masked man entered but left the apartment during the fight) heard a gunshot, and the masked man fled from Civill's apartment. *Id.* The witness observed the masked man, who at this point was no longer masked, discard Civill's wallet in a trash can, and later

identified the masked man as Petitioner in a photo line-up and by his nickname. *Id.*

Petitioner proceeded to a jury trial on the murder and robbery charges. ECF Nos. 31-2, 31-3, 31-4, 31-5, 31-6, 31-7, 31-8. During the trial—which began on February 21, 2012, and lasted four days—the State presented testimony from 22 witnesses.

Relevant here, Shaneka Smith testified that she met Civill through his roommate Bernie Robinson, and all three lived at the Cedar Ridge apartment complex. ECF No. 31-2 at 54–55. Shaneka Smith purchased a vehicle from Civill, fronted him money to purchase alcohol and illegal drugs, and, on two occasions, connected him with a prostitute, Smith's cousin Metoka Thomas. *Id.* at 56–57. On November 3, 2010, Civill asked Smith to buy him cocaine and to "get him" Metoka Thomas. *Id.* at 58. Civill, Smith, and Thomas went to the M&S Bank and obtained $50.00 from Civill's account but had trouble getting more cash. *Id.* at 59. When they returned to Cedar Ridge around Noon, Thomas and Civill went to Civill's apartment and Smith left. *Id.* at 60.

Metoka Thomas testified (as a cooperating witness) that she went to Cedar Ridge on November 3, 2010, to "meet with" Civill and use cocaine. ECF No. 31-3 at 68–69. Thomas echoed Smith's testimony that they,

Civill, and Smith's boyfriend (Bryan Thomas) went to the M&S Bank and one other location for Civill to get cash for the cocaine.  *Id.* at 73.  Civill gave Smith $90.00 for half an "eight-ball" before Civill and Thomas entered Civill's apartment.  *Id.* at 74–75.

Thomas, Civill, and Robinson proceeded to ingest cocaine at the dining room table in Civill's apartment.  *Id.* at 76.  They then retreated into Civill's living room, where Civill and Thomas discussed paying her for sex. They agreed Civill would pay Thomas $30.00 for him to perform a sex act on her in his bedroom.  *Id.* at 77–78.  When Civill, Thomas, and Robinson used the entirety of the cocaine Civill purchased, Thomas asked Civill for money to purchase more.  *Id.* at 79.  Civill gave her $40.00 and she left the apartment at about 4:00 p.m.  *Id.*

Thomas purchased more cocaine and returned to Cedar Ridge, where she ran into Petitioner, Percennie Hall, Shevon Baker, and Joseph Baker.  *Id.* at 81, 84.  After Hall and Thomas smoked marijuana laced with cocaine, Petitioner and Thomas struck up a conversation.  *Id.* at 84–85. When Thomas informed everyone that she was at Civill's apartment "getting high" after "he had gotten his check," Petitioner asked how much money Civill had.  *Id.* at 85–86.  Petitioner told Thomas that he needed

4

money and was going to rob Civill. *Id.* at 86. And, in response, Thomas told Petitioner that she wanted him to "look out for [her]." *Id.* at 86–87.

Petitioner and Thomas went to Civill's apartment, and, while outside, Thomas introduced Civill to Petitioner. *Id.* at 88. Thomas vouched for Petitioner to go inside Civill's apartment, after which Thomas and Civill went to Civill's bedroom. *Id.* at 89. While in the bedroom, Thomas and Civill ingested more cocaine. ECF No. 31-4 at 51. Thomas laid on the bed (facing the open door to the living room) but stalled Civill's advances. *Id.* at 53. Meanwhile, Thomas saw Petitioner, in the living room, place a mask (black with yellow stitching) over his face and enter the bedroom with a gun. *Id.* at 55–57.

Petitioner aimed the barrel of the gun at Civill's head and told Civill to "give it up." *Id.* at 58–59. Petitioner asked Civill, "where the money at?" *Id.* at 59. Thomas panicked when she saw the gun and ran into the living room. *Id.* at 60. Thomas attempted to wake up Bernie Robinson, who was intoxicated and nonresponsive on the couch. *Id.* at 61. By the time Robinson opened his eyes, Civill was struggling with Petitioner in the dining room. *Id.* at 62–63. The last thing Thomas saw before she and Robinson exited the apartment was the "gun waving in [Petitioner's] right hand." *Id.* at 63. As Thomas was running, she heard a gunshot. *Id.* at 64.

Thomas told Hall that Petitioner shot Civill, and Hall advised Thomas to "get the f--- off the block."  *Id.* at 66.  Petitioner, who came from the back of Civill's apartment and was no longer wearing a mask, met Thomas in an alleyway and showed her Civill's wallet.  *Id.* at 70, 72.  Petitioner took money from the wallet, gave Thomas $10.00, and dropped the wallet in the trash can.  *Id.* at 73.  Petitioner then ran into the area behind the apartment. *Id.*

The State also called several other witnesses in its case-in-chief, including residents or frequent visitors of the Cedar Ridge apartment complex.  Tony Heard, a resident of Cedar Ridge, testified that, after Petitioner's flight, Robinson told him Civill was dead.  ECF No. 31-3 at 105–08.  Heard called emergency services and entered the apartment to discover Civill's lifeless body.  *Id.* at 108–10.  Heard and his cousin grabbed Civill's bedroom blanket and turned Civill's body over.  *Id.* at 112. And Joseph Baker testified that on November 3, 2010, he saw Petitioner (who was agitated and had a bruise on the right side of his face) meet Metoka Thomas by a trash can and give Thomas money that she placed in her bra.  *Id.* at 53–56.

Shantay Cook testified that she knew Petitioner and saw him playing cards in an outdoor area of Cedar Ridge on November 3, 2010.  ECF No.

6

31-2 at 75, 77.  On the prior Saturday, Cook heard a single gunshot at Cedar Ridge and, three seconds later, saw Petitioner emerge from an alleyway.  *Id.* at 79–80.  Over Petitioner's counsel's relevance and hearsay objections, Cook testified that shortly after the gunshot people she socialized with told Petitioner to "stop playing with that damn gun," to which Petitioner responded "my bad" and said he was attempting to "disarm the gun." *Id.* at 81–84.

Shevon Baker testified that on November 2, 2010, she saw Petitioner interact with another man (who was holding a gun) and overheard parts of their conversation.  ECF No. 31-3 at 8–9.  Baker stated, over defense counsel's relevance and hearsay objections, that the unidentified man asked Petitioner, "Where was it?"  *Id.* at 9–12.  Petitioner answered that he did not know and that he was "going to get it."  *Id.* at 12–13.  The unidentified man told Petitioner that "if [Petitioner] didn't get it, he was going to come get [Petitioner]."  *Id.* at 15.  The following day, Baker saw Thomas approach Petitioner to talk.  *Id.* at 19.  Later, she saw them talking by a trash can.  *Id.* at 23.  Petitioner, who walked past Baker, was "walking like he was out of breath."  *Id.* at 24.  Baker testified that Petitioner had a bruise on his face, that he was sweaty, and that she saw him throw a wallet in a trash can.  *Id.* 25.

The bulk of the remainder of State's witnesses were related to the investigation of Civill's death and the collection of evidence. *See* ECF No. 31 at 8–9 (summarizing the testimony and evidence presented). After the State rested its case-in-chief, Petitioner's counsel admitted exhibits but did not present witness testimony. ECF No. 31-7 at 148–51. Defense counsel moved for a judgment of acquittal on the murder and robbery charges and presented only the argument that the State failed to prove a prima facie case. *Id.* at 152. The trial court denied the motion for judgment of acquittal. *Id.* The jury found Petitioner guilty on both charges, ECF No. 31-1 at 154–57; ECF No. 31-8 at 127–29, and the trial court sentenced Petitioner to life imprisonment, ECF No. 31-1 at 158–63.

Petitioner timely appealed his convictions to the First District Court of Appeal ("First DCA"). ECF No. 31-1 at 180. Petitioner argued on direct appeal that the trial court erred when it allowed Shantay Cook and Shevon Baker to testify about the events involving Petitioner prior to November 3, 2010 (respectively, the discharge of Petitioner's firearm and his conversation with the unidentified man). ECF No. 31-9. The First DCA affirmed the conviction in a *per curiam* opinion on August 30, 2013. ECF No. 31-11. Petitioner did not seek any further direct review in the Florida Supreme Court or the United States Supreme Court.

8

On June 18, 2015, Petitioner, proceeding *pro se*, filed in state court his first motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  ECF No. 31-12 at 21.  As amended, Petitioner argued that his trial counsel was constitutionally ineffective for failing to move for a judgment of acquittal asserting, on the robbery charge, that the State failed to prove "the essential element of a forced entry or an unlawful entry[.]"  *Id.* at 26–31.  The trial court denied the amended motion in a written order on June 13, 2017.  *Id.* at 33–35.  After setting out the legal standard for a prima facie case for ineffective assistance of counsel, under *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court concluded that Petitioner's counsel was not ineffective.  *Id.* at 34–35.  The trial court reasoned that any motion for judgment of acquittal based on the State's failure to prove "forced entry" would have been denied because it is not an element of home invasion robbery and, to the extent it matters, his entry was unlawful because it was obtained by "trick or fraud."  *Id.* at 34–35.

Petitioner timely appealed to the First DCA the trial court's order denying his motion for post-conviction relief.  ECF No. 31-12 at 76; ECF No. 31-13.  The First DCA affirmed the conviction in a *per curiam* opinion on January 31, 2018, ECF No. 31-15 at 1, and issued its mandate on February 28, 2018, *id.* at 2.  Petitioner timely filed his habeas petition in this

Court less than two months later.  *See* ECF No. 27 (denying Respondent's

motion to dismiss the instant Amended Petition).

## II.  THE § 2254 STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d)(2) of the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), a federal court may not grant a state

prisoner's application for a writ of habeas corpus based on a claim already

adjudicated on the merits in state court unless that adjudication "resulted in

a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."  Under §

2254(e)(1), "a determination of a factual issue made by a State court shall

be presumed to be correct," and the petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing

evidence."  "'[A] state-court factual determination is not unreasonable

merely because the federal habeas court would have reached a different

conclusion in the first instance.'"  *Burt v. Titlow,* 571 U.S. 12*,* 18 (2013)

(quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief

only if the state court's adjudication of the merits of the federal claim

"resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the

10

Supreme Court of the United States." § 2254(d)(1); *see Burt*, 571 U.S. at 18-19 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.

This highly deferential standard carries special force in habeas cases asserting ineffective-assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. 86,

11

103 (2011). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 562 U.S. at 102). "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 562 U.S. at 102).

## III.  DISCUSSION

Petitioner raises three grounds in his Amended Petition.  As explained below, Ground One is without merit and Grounds Two and Three are unexhausted and not cognizable claims for federal habeas relief.

### A.    Petitioner's claim of ineffective assistance of counsel in Ground One is without merit.

Ground One is the sole claim raised in Petitioner's Rule 3.850 motion for post-conviction relief.  Petitioner contends that his trial counsel was constitutionally ineffective because he failed to move for a judgment of acquittal asserting, on the robbery charge, that the State failed to prove a forced or unlawful entry.  ECF No. 7 at 8.  Looking through the First DCA's *per curiam* affirmance, *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018), Petitioner says the trial court's application of *Strickland* was unreasonable.

To prevail on a constitutional claim of ineffective assistance of counsel, Petitioner must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was

prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686; *see also Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). In applying *Strickland*, the Court may dispose of an ineffective assistance claim if Petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, the Court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009); *see also Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) ("[A] defendant has a right to effective representation, not a right to an attorney who performs his duties mistake-free."); *Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct). To show counsel's performance was unreasonable, Petitioner must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th

Cir. 2008); *see also Chandler*, 218 F.3d at 1315. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Id.* at 1316 n.18.

To establish prejudice, Petitioner must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (2011). For the Court to focus merely on "outcome determination," however, is insufficient. In other words, "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *see also Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 753–45 (11th Cir. 2010). Therefore, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369.

The Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail … are few and far between." *Chandler*, 218 F.3d at 1313.

14

This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099. "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Id.* (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).[2] And in federal habeas cases such as this, the AEDPA demands an additional layer of deference. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, DOC*, 943 F.3d 907, 911 (11th Cir. 2011)).

Turning to this case, Ground One rests on a faulty premise. Petitioner assumes that unlawful or forced entry is an essential element of home invasion robbery under Florida law and from there implies that his

---

[2] The Sixth Circuit appropriately frames the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

counsel was ineffective because he misapprehended the law.  Indeed, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland.*" *Hinton v. Alabama*, 571 U.S. 263, (2014).  But there was no legal error by Petitioner's trial counsel, let alone the trial court in resolving Petitioner's Rule 3.850 motion.

As the trial court explained, ECF No. 31-12 at 34, Florida law defines home invasion robbery as "any robbery that occurs when the offender enters a dwelling with the intent to commit a robbery, and does commit a robbery of the occupants therein."  Fla. Stat. § 812.135.  Neither the statutory language nor the standard jury instructions for home invasion robbery, ECF No. 31-8 at 101–02, state or suggest that an individual's entry must be forced or unlawful.  Although it is telling that Petitioner does not cite a single case in his state post-conviction motion, Amended Petition, or reply memorandum holding otherwise, the Court's own legal research revealed none.  And if what Petitioner meant is that counsel should have argued the State failed to prove he had an intent to commit the robbery when he entered Civill's dwelling, such an argument would have been contradicted by the record.  *See* ECF No. 31-3 at 86–87 (Metoka Thomas's

testimony that Petitioner told her prior to meeting Civill on November 3, 2010, that he planned to rob him).

Because trial counsel could not move for a judgment of acquittal unsupported by the applicable law, Petitioner has not demonstrated that his failure to do so was deficient under *Strickland*.  Therefore, the state trial court did not unreasonably apply *Strickland* and Ground One is due to be denied.

### B.   Grounds Two and Three are unexhausted and not cognizable claims for federal habeas relief.

Petitioner argues in Grounds Two and Three, respectively, that he was deprived of his constitutional right to a fair trial when the trial court permitted Shevon Baker to testify about Petitioner's encounter with the unidentified man on November 2, 2010, and Shantay Cook to testify about Petitioner allegedly firing a gun at Cedar Ridge the week before Civill's death.  ECF No. 7 at 10, 12.  There is no question that Petitioner raised arguments about the admissibility of this testimony on direct appeal, but in so doing he relied only on the Florida Evidence Code and cases interpreting the Code.  ECF No. 31-9.  He did not cite a federal source of law such as the United States Constitution or make even a passing reference (as he does here) to his constitutional right to a fair trial.  *Id.*

The Court concludes that Grounds Two and Three are unexhausted. Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).

Petitioner did not "fairly present" to the First DCA the evidentiary objections underlying Grounds Two and Three as ones implicating federal law to give the appellate court a meaningful opportunity to address his federal rights.  Instead, he cited only state law, ECF No. 31-9 at 3–4, and

did not intimate that the admission of this evidence implicated his right to a fair trial.  Therefore, Grounds Two and Three, which are predicated upon a federal constitutional right to a fair trial, are unexhausted and procedurally defaulted.

In the same vein, Grounds Two and Three are not cognizable claims for federal habeas relief.  A petitioner is entitled to federal habeas relief only if he can show that a state court's adjudication of the merits of a federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  Federal habeas courts do not review state evidentiary rulings unless the alleged error is of such magnitude as to render the trial fundamentally unfair.  *Estelle v. McGuire*, 502 U.S. 62, 71 (1991).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983).  This limitation applies with equal force when a petition, which truly involves only state law issues, is couched in terms of alleged constitutional violations raised for the first time in federal court.  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989).

As Respondent argues, ECF No. 31 at 21–31, Grounds Two and Three are merely recitations of Petitioner's evidentiary objections based on state law.  They leave no room for this Court to find that the state trial court addressing those objections violated a principle of federal law fairly presented to it because Petitioner did not assert an issue of federal law in state court and does so here only in passing (by referencing his right to a fair trial).  Petitioner concedes as much in his reply memorandum, in which he stated he "ha[d] no argument" as to Grounds Two and Three in the face of Respondent's response.  ECF No. 33 at 3.

In sum, Grounds Two and Three are due to be denied because they are unexhausted and do not present cognizable claims for federal habeas relief.

## IV.  CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing § 2254 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  To warrant the issuance of a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*,

529 U.S. 473, 484 (2000) (holding "a substantial showing of the denial of a constitutional right … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (internal citations omitted)). A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability.  Rules Governing § 2254 Cases, R. 11(b).

Upon consideration of the applicable law, the undersigned does not find a substantial showing of the denial of a constitutional right.   The undersigned, therefore, recommends that a certificate of appealability should be **DENIED**.

Rule 11(a) further provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the permitted objections.

## V. CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that the Amended

Petition for Writ of Habeas Corpus, ECF No. 7, should be **DENIED** and a

certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 16th day of July 2021.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**